**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

DOUGLAS LOONEY and
TAMMY LOONEY, husband and wife,

          Plaintiffs,

v.                                  CIVIL ACTION NO. 3:24-0467

APPALACHIAN POWER COMPANY,
d/b/a AEP Appalachian Power,
NORTH AMERICAN SERVICES GROUP, LLC,
d/b/a Evergreen North American Industrial Services,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant North American Services Group, LLC's Motion for Summary Judgment (ECF 59, Def.'s Mot.). For the reasons stated below, the Court **DENIES** the Motion.

**BACKGROUND**

For about 14 years, Defendant North American Services Group, LLC (ENAIS) employed Plaintiff Douglas Looney to operate vacuum trucks and clean out their tanks. *See* ECF 59, Def.'s Mem. 2; Def.'s Mot., Ex. 1, at 29.

On September 2, 2022, Mr. Looney's supervisor, Geoffrey Lindsey, told Mr. Looney and other ENAIS employees to remove ash from a tank. *See* ECF 70, Pls.' Resp. 5–6; Pls.' Resp., Ex. 4, at 4. The truck was located on the property of Defendant Appalachian Power Company (APCO). *See* Def.'s Mot., Ex. 2, at 34.

Mr. Looney testified the ash in the truck was "granular . . . ." Def.'s Mot., Ex. 1, at 37. It compacted when water was added to it. *See id.* He explained he had never cleaned a truck containing material of this consistency. *See id.* at 36–37. He was used to cleaning rocky, chunky material. *See id.* at 37.

To clean a vacuum truck, ENAIS employees would first raise the truck bed to remove loose material. *See id.* at 40, 42. After lowering the truck bed, they would rinse the inside of the truck tank with a hose. *See id.* at 42–43. Mr. Looney testified that, when cleaning tanks, he would stand to the side of the tank door so he could move out of the way of moving material. *See id.* at 52.

On September 2, Mr. Looney and his coworkers were struggling to remove ash from the trunk tank. *See id.* at 83, 87. Mr. Looney was rinsing the tank from the side when he stepped behind the truck bed to get a better angle. *See id.* at 93; Pls.' Resp., Ex. 4, at 5. A large chunk of ash came loose and struck Mr. Looney's legs and feet, injuring him. *See* Pls.' Resp., Ex. 4, at 5–6.

Mr. Looney said he was not aware of anyone who had experienced as much difficulty cleaning a truck nor of anyone who had experienced a similar accident. *See* Def.'s Mot., Ex. 1, at 109.

At the time of the accident, Mr. Looney was wearing steel-toed boots, a hard hat, safety glasses, a Tyvek suit, gloves, a face shield, and earplugs. Def.'s Mot., Ex. 1, at 30. Plaintiffs' expert, Quincy Coleman, opined that Mr. Looney should have also been wearing metatarsal guards on his feet. *See* Pls.' Resp., Ex. 5, at 22.

Mr. Looney testified he had previously seen employees standing "directly behind the opening" of vacuum-truck tanks. *See* Pls.' Resp., Ex. 3, at 66. In addition, Mr. Coleman opined that cleaning the truck required Mr. Looney to position himself such "that he was standing directly in the line of the falling objects hazards." Pls.' Resp., Ex. 5, at 21.

In a document about the accident, ENAIS's Incident Review Board said that employees cleaning tanks would sometimes "[m]ove behind [the truck] bed between [the] opening and [the] open [tank] door to get a better angle on" the debris in the tank. Pls.' Resp., Ex. 4, at 17. It noted that Mr. Looney and his coworkers had been cleaning trucks "this way for decades" and that "[a]llegedly this is common practice across companies . . . ." *Id.* at 18. The Board concluded that "[t]o an outside eye, with hindsight[,] the hazard and risk is obvious." *Id.* It attributed the accident to a "normalization of deviation." *Id.*

A separate analysis of the accident noted that "[u]tilizing a ¾" Chicago style hose to direct water into a tank bed has been a common practice for over 20 years." Pls.' Resp., Ex. 2, at 3. The analysis concluded "this tooling setup compels a worker to occasionally stand in the line of fire in order to effectively reach and rinse all debris from the truck bed." *Id.*

After the accident, Mr. Looney and his wife sued ENAIS and APCO. *See generally* ECF 1, Compl. They alleged APCO acted negligently by allowing ENAIS to perform services on its property and failing to supervise the company's work. *See id.* § 12. Further, Plaintiffs alleged ENAIS acted with deliberate intent in causing Mr. Looney's injuries. *See id.* § 23. APCO and ENAIS both moved for summary judgment, *see generally* ECF 60; Def.'s Mot., but Plaintiffs and APCO subsequently settled, *see* ECF 72, at 1.

### STANDARD OF REVIEW

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence presented would allow a reasonable factfinder to find for the nonmovant. A fact is 'material' if it may influence the outcome of the suit under governing law." *Bhattacharya v. Murray*, 93 F.4th 675, 686 (4th Cir. 2024) (internal citations

omitted). In deciding whether to grant summary judgment, "a court must view all facts, and reasonable inferences taken therefrom, in the light most favorable to the nonmoving party . . . ." *Id.*

## ANALYSIS

In West Virginia, deliberate-intent claims have five elements:

(i)     That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(ii)    That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition[;] . . .

(iii)   That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer[;] . . .

(iv)    That notwithstanding the existence of the facts set forth in subparagraphs (i) through (iii), inclusive, of this paragraph, the person or persons alleged to have actual knowledge under subparagraph (ii) nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and

(v)     That the employee exposed suffered serious compensable injury or compensable death as defined in section one, article four, chapter twenty-three as a direct and proximate result of the specific unsafe working condition.

W. Va. Code § 23-4-2(d)(2)(B). ENAIS argues Plaintiffs have failed to offer evidence of elements (ii), (iv), and (v). *See* Def.'s Mem. 8. It also argues it is entitled to summary judgment because the affidavit Plaintiffs filed along with their Complaint was inaccurate. *See id.* at 10.

### A.  Plaintiffs' Expert Affidavit Was Not Inaccurate

West Virginia law requires a deliberate-intent plaintiff to file an affidavit from an expert along with their complaint. *See* W. Va. Code § 23-4-2(d)(2)(iii)(C). In this case, Plaintiffs filed an

-4-

affidavit from Jennifer Morningstar, who opined that ENAIS violated OSHA regulations by failing to provide employees like Mr. Looney with "work boots equipped with a metatarsal guard . . . ." ECF 1-1, at 6.

ENAIS asserts that Ms. Morningstar's affidavit was inaccurate because Mr. Looney testified he was wearing personal protective equipment (PPE) on the day of the accident. *See* Def.'s Mem. 10. But Ms. Morningstar averred that Mr. Looney lacked metatarsal guards, not that he lacked any PPE. *See* ECF 1-1, at 6. ENAIS has pointed to no part of the record indicating Mr. Looney was wearing metatarsal guards at the time of the accident. *See* Def.'s Mem. 10. Since ENAIS has not shown Ms. Morningstar's affidavit was inaccurate, the Court will not grant summary judgment on this basis.

Even if the Court agreed Plaintiffs filed a flawed expert affidavit, and thus failed to comply with § 23-4-2(d)(2)(iii)(C), the Court would not dismiss Plaintiffs' action. In *Berk v. Choy*, the United States Supreme Court held that expert-affidavit requirements like West Virginia's do not apply in federal court. *See* No. 24-440, slip op. at 1, 8 (2026).

### B.  Plaintiffs Have Offered Evidence of Actual Knowledge

2015 amendments to West Virginia's deliberate-intent statute clarify that actual knowledge cannot be "implied or presumed," and instead must be "specifically proved by positive evidence." *Blaniar v. Sw. Energy Co.*, Civ. A. No. 5:20-CV-169, 2022 WL 611005, at \*5 (N.D. W. Va. Mar. 1, 2022).

ENAIS argues it is entitled to summary judgment because Plaintiffs have failed to offer evidence that ENAIS had actual knowledge of an unsafe working condition.[1] *See* Def.'s Mem. 11.

---

[1] ENAIS argues that, due to this lack of evidence, Plaintiffs could not prove elements (ii) and (iv). *See* Def.'s Mem. 12. Element (ii) deals directly with actual knowledge, *see* W. Va. Code § 23-4-2(d)(2)(B)(ii), while element (iv) requires a plaintiff to show the defendant "intentionally . . . exposed an employee to the specific unsafe working condition," *id.* § 23-4-2(d)(2)(B)(iv). Defendant argues that, if an employer lacks actual knowledge of an unsafe

Plaintiffs have, in fact, pointed to evidence of actual knowledge. ENAIS's own documents, as well as Mr. Looney's testimony, suggest ENAIS employees had been standing directly behind truck tanks to clean them for decades. Mr. Coleman, meanwhile, opined that standing directly behind the tanks was *necessary* to clean the tanks. If all this is true, it is hard to imagine ENAIS management had no knowledge of this practice.

ENAIS argues its documents do not show actual knowledge because they were created after the accident and therefore contain information "acquired as a result of the company's inquiries made" afterwards. Def.'s Reply 1. The documents undoubtedly contain information that was learned as a result of the accident, and this information could not, of course, speak to ENAIS's pre-accident knowledge. But putting aside any information ENAIS learned as a result of the accident, the documents still provide evidence of actual knowledge. By noting that employees had been standing directly behind tanks for such a long time, the documents suggest ENAIS knew, at the time of the accident, about the unsafe working condition. *See Toth v. A&R Logistics, Inc.*, Civ. A. No. 2:16-cv-09793, 2018 WL 2976427, at *4 (S.D. W. Va. June 12, 2018) (holding actual knowledge could be inferred where employer sent multiple employees to complete a dangerous task without full training).

ENAIS also argues that, if cleaners had been standing directly behind trucks without incident for over twenty years, such conduct cannot be "high risk" or carry a "strong possibility of serious injury or death" as required by § 23-4-2(d)(2)(B). *See id.* at 2. Since ENAIS never made this argument in their opening brief, it is not properly before the Court. *See Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) ("The ordinary rule in federal

---

working condition, they cannot intentionally expose an employee to that condition. *See* Def.'s Mem. 12. The Court need not address this argument. If Plaintiffs did not produce evidence of actual knowledge, Defendants would be entitled to summary judgment, regardless of whether Plaintiffs failed to satisfy one element or two.

courts is that an argument raised for the first time in a reply brief or memorandum will not be considered.").

Even if ENAIS had not waived this argument, the Court would deny ENAIS's Motion. ENAIS does not point to any authority suggesting that an activity is not, as a matter of law, "high risk" when it has not caused injury in a long time. Also, ENAIS's own Incident Review Board stated the risk of standing directly behind a truck tank while cleaning it "is obvious."

Finally, ENAIS argues it is entitled to summary judgment because Plaintiffs have not identified a particular individual who had actual knowledge of the unsafe working condition. *See* Def.'s Reply 3. Again, ENAIS waived this argument by failing to raise it in their opening brief. Even so, the Court finds it unpersuasive. It is true, of course, that a corporate employer's "knowledge" is really the knowledge of its managers or owners. *Cf. In re Infinity Business Group*, 497 B.R. 794, 805 (Bankr. D.S.C. 2013). It is also true that § 23-4-2(d)(2)(B) requires a plaintiff to show that a "person or persons" intentionally exposed her to an unsafe working condition. W. Va. Code § 23-4-2(d)(2)(B)(iv). But it does not follow that a deliberate-intent plaintiff must prove any particular individual had actual knowledge. They need only convince a jury that *some* individual whose knowledge can be attributed to the employer had actual knowledge. Plaintiffs could do so here. Given the evidence that employees had stood behind trucks to clean them for decades, a reasonable juror could conclude that at least some ENAIS managers had actual knowledge of the unsafe working condition.

### C. Plaintiffs Have Offered Evidence of Proximate Causation

Proximate causation is necessary to satisfy element (v) of a deliberate-intent claim. *See* W. Va. Code § 23-4-2(d)(2)(B)(v). ENAIS argues Plaintiffs cannot show the unsafe working condition

proximately caused Mr. Looney's injuries because the proximate cause of the accident was "Looney's decision to stand at the end of the tank while it was raised . . . ." Def.'s Mem. 13.

"While the requirement of 'proximate cause in a deliberate intent cause of action is statutory, the definition of proximate cause set out in the statute is the common law definition' adopted by the West Virginia Supreme Court." *Skaggs v. Kroger Co./Kriger Ltd. P'ship I*, 788 F. Supp. 2d 501, 510 (S.D. W. Va. 2011) (quoting *Tolley v. Carboline Co.*, 617 S.E.2d 508, 512 (W. Va. 2005)). The West Virginia Supreme Court has held that "the proximate cause of an event is that cause which in actual sequence, unbroken by any independent cause, produces the event and without which the event would not have occurred." *Tolley*, 617 S.E.2d at 512 (quoting *Johnson v. Mays*, 447 S.E.2d 563, 568 (W. Va. 1994)).

In deliberate-intent cases, issues of proximate causation often overlap with issues of an employee's contribution to the accident. *See, e.g.*, *Skaggs*, 788 F. Supp. 2d at 510–12. While an "employer may not assert the employee's contributory negligence as a defense to" deliberate intent, Syl. pt. 8, *Roberts v. Consolidation Coal Co.*, 539 S.E.2d 478 (2000), "an employee cannot create the unsafe working condition that is at the center of his 'deliberate intent' cause of action," *Master Mech. Insulation, Inc. v. Simmons*, 753 S.E.2d 79, 85 (W. Va. 2013).

In *Arnazzi v. Quad/Graphics, Inc.*, an employee sued his employer for deliberate intent after he was injured while operating a forklift at work. *See* 621 S.E.2d 705, 706–08. The defendant had failed to provide the plaintiff with forklift safety training. *See id.* at 708–09. "An accident report on the incident . . . listed the cause of the accident as . . . a violation of a safety rule, and stated that the [plaintiff] had his foot outside the [forklift's] cab." *Id.* at 708. Other evidence showed that the plaintiff "had been observed driving with his foot outside the cab" and "had not always operated his forklift with proper caution, attention, care, etc." *Id.* at 708–09. The West

-8-

Virginia Supreme Court held the defendant was not entitled to summary judgment with respect to proximate causation. *See id.* at 709. "[T]here was evidence," the court explained, "that would tend to show that the specific unsafe working condition of a lack of forklift safety training was a proximate cause of the accident . . . ." *Id.*

*Arnazzi* suggests an employee's own conduct does not destroy proximate causation where it results from the employer's own practices. Here, a reasonable juror could conclude Mr. Looney's decision to stand behind the truck tank reflected a long-standing workplace practice rather than an independent choice. Accordingly, a reasonable juror could conclude an unsafe working condition proximately caused Mr. Looney's injuries.

### CONCLUSION

The Court **DENIES** ENAIS's Motion for Summary Judgment (ECF 59). The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        March 24, 2026

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE